Austin, J.
(concurs in part and dissents in part, and votes to *20 dismiss the appeal from the order dated August 10, 2012, reverse the final order entered August 13, 2012, grant the petition of Simcha Felder to invalidate the designating petition of David Storobin, and direct the Board of Elections in the City of New York to remove the name of David Storobin from the appropriate ballots, with the following opinion).
Candidates for public office who carry petitions in furtherance of their candidacy are held to a higher standard than campaign volunteers who collect signatures for their candidate. Generally, to invalidate the designating petition of a candidate on the basis of fraud, there must be a showing that the entire designating petition is permeated with fraud (see Matter of Ferraro v McNab, 60 NY2d 601 [1983]; Matter of Lavine v Imbroto, 98 AD3d 620 [2012]; Matter of Volino v Calvi, 87 AD3d 657, 658 [2011]; Matter of Drace v Sayegh, 43 AD3d 481, 482 [2007]; Matter of Leonard v Pradhan, 286 AD2d 459 [2001]). However, where there is a finding that “the candidate has participated in or is chargeable with knowledge of fraud in procuring signatures for a designating petition, even if there is a sufficient number of valid signatures independent of those fraudulently procured,” the candidate’s designating petition should be invalidated (Matter of Drace v Sayegh, 43 AD3d at 482; see Matter of Volino v Calvi, 87 AD3d at 658; Matter of Cirillo v Gardiner, 65 AD3d 638, 639 [2009]; Matter of Tapper v Sampel, 54 AD3d 435, 436 [2008]; Matter of Leonard v Pradhan, 286 AD2d 459 [2001]).
Here, based upon the admissions of David Storobin and the record of the evidentiary hearing held in connection with this matter, I believe that there is clear and convincing proof to establish that Storobin engaged in fraud in the procurement of signatures on his designating petition for the Republican nomination for the New York State Senate for the 17th Senatorial District so as to warrant the invalidation of his designating petition, even though the designating petition otherwise had a sufficient number of valid signatures[1] (see Matter of Drace v Sayegh, 43 AD3d 481 [2007]; Matter of Leonard v Pradhan, 286 AD2d 459 [2001]; Matter of Flower v D'Apice, 104 AD2d 578 [1984], affd 63 NY2d 715 [1984]). Accordingly, I respectfully dissent.
There are several examples of fraudulent conduct on the part of Storobin wherein he directly or indirectly failed to honor a *21 witness’s oath on the designating petition by materially misstating information relating to the name and address of the signatory whose signature he claimed to have witnessed, obtaining the signature of a voter who is not a registered Republican, and obtaining signatures which do not correspond with the putative signatory’s voter registration form, commonly known as a buff card. In addition, he was aware of the fact that, and testified at the hearing that, campaign volunteers executed witness statements with regard to signatures they did not witness.
The Signature of Michail Issak
It is undisputed that on line 1 of sheet 30 of volume 201 of his designating petition, Storobin obtained the signature of Michail Issak, who resides at 1569 Ocean Parkway, apartment IF, Brooklyn. Although Storobin testified at the hearing that he utilized a “walk list” of registered Republicans which was organized by assembly district, election district, and address, Issak was not on the list. In fact, he is not an American citizen. Storobin nonetheless procured and witnessed Issak’s signature. Had that alone been Storobin’s error, then I agree with my colleagues that the signature should be invalidated and no further action taken.
Storobin, however, despite his professed usual practice of printing the signing voter’s name underneath the signature, did not do so in this case, even though he did add a partial address in the space provided for the signatory’s address. Several hours later, when Storobin reviewed sheet 30, he did not remember who signed the designating petition or at what address the signature was obtained. Indeed, the Issak signature, Storobin testified, was illegible, although he thought the first letter was an “H.”[2] So, utilizing the walk list as his reference, he “guessed” that one Hilda Danger signed line 1 of sheet 30 of his designating petition. Storobin then printed “Hilda Danger” under the Issak signature. The problem was that Danger was not listed as residing at 1569 Ocean Parkway, as Storobin initially noted on sheet 30. According to the walk list, she resided at 1576 Ocean Parkway. Undaunted, as noted by the Supreme Court, Storobin admitted changing the address on sheet 30 to conform with that of Danger without any factual basis for doing so. It is undisputed that, at the time Storobin made his guess and changes on sheet 30, Danger had been dead for approximately two years.
*22 Nevertheless, Storobin knowingly completed and executed the “Statement of Witness” at the foot of sheet 30 of the designating petition, as he was required to do pursuant to Election Law § 6-132 (2), which, in relevant part, states:
“STATEMENT OF WITNESS
“I,....................(name of witness) state: I am a duly qualified voter of the State of New York and am an enrolled voter of the...... ..............party. I now reside at...... ..............(residence address).
“Each of the individuals whose names are subscribed to this petition sheet containing...... ..............(fill in number) signatures, subscribed the same in my presence on the dates above indicated and identified himself or herself to he the individual who signed this sheet.
“I understand that this statement will he accepted for all purposes as the equivalent of an affidavit and, if it contains a material false statement, shall subject me to the same penalties as if I had been duly sworn” (emphasis added).
This statement was executed by Storobin himself. Thus, the undisputed facts, when read in the context of the Statement of Witness being the equivalent of an affidavit, present a most troubling scenario. It is plain that Danger did not identify “herself to be the individual who signed this sheet” and the signature was not procured at the address indicated. By admitting that he “guessed” as to who signed sheet 30, and then swearing to the truth of his guess, as well as altering the address where the signature was procured, Storobin admitted making a materially false statement under oath.[3] There is nothing speculative or conjectural about these findings or their implications for the integrity of the petition process.
*23 An oath is “[a] solemn declaration, accompanied by a swearing to God or a revered person or thing, that one’s statement is true or that one will be bound to a promise” (Black’s Law Dictionary 1101 [8th ed 2004]; see CPLR 2309 [b]). The intent of CPLR 2309 is to ensure that the taking of an oath is “an unequivocal act of assent to tell the truth” (2d Preliminary Rep of Advisory Comm on Prac and Pro, 1958 NY Legis Doc No. 13 at 204; see Penal Law § 210.00 [1] [defining “oath” as “an affirmation and every other mode authorized by law of attesting to the truth of that which is stated”]).
In my opinion, Storobin’s admitted material misrepresentations violated his oath as a subscribing witness that cannot be excused, as his counsel urges, based upon his status as an emigre from foreign shores, as an upset winner in a recent special election for the Senate seat he now seeks to retain, or, as his counsel put it, one who was inexperienced and was merely caught up in the “frenzy” of the petitioning season, and consequently made an honest, innocent mistake.[4] To compound the fraud, Storobin is an attorney who should have been guided by ethical constraints (see Rules of Professional Conduct [22 NYCRR 1200.0] rule 8.4 [b], [c]).[5] The courts should not tolerate the submission of a materially false affidavit or affirmation from an attorney whose factual assertions were based upon a “guess” (see 22 NYCRR 130-1.1 [c]). Relying upon the fact that Issak did sign the petition misses the point. Storobin had, and violated, his statutory duty to truthfully report that Issak signed sheet 30 at the originally indicated address. He abrogated that duty by guessing as to who signed, altering the designating petition as to where it was signed, and then falsely swearing to the truth of his admitted guess and alteration.
The Board of Elections in the City of New York, and ultimately the voters who must necessarily rely upon the accuracy of the designating petitions submitted, as well as the candidates they purport to nominate, cannot be misled by a candidate playing fast and loose with the integrity of the nominating process.
*24 Yes, mistakes happen. No designating petition is pristine. However, when a knowing error is made by a candidate, this Court should not dismiss it as a “careless” error demonstrating “questionable judgment,” as described by the Supreme Court, which negates both “intentional fraud” and the violation of his or her oath. Since the swearing of an oath is a thoughtful, knowing act, I respectfully disagree with my colleagues in the majority. Storobin demonstrated a “wrongful intent” when he swore to the truth of the contents of sheet 30. I can discern no good faith in the manner in which Storobin altered, and swore to the truth of, sheet 30.
On this basis alone, the designating petition should have been invalidated (see Matter of Leonard v Pradhan, 286 AD2d at 459 [“Where, as here, the candidate himself, as a subscribing witness, has participated in the fraud, the petition should be invalidated”]; Matter of Flower v D'Apice, 104 AD2d at 578 [designating petition invalidated where candidate conceded that an individual identified on his designating petition did not sign the petition, and that the candidate knew of this irregularlity]; cf. Matter of Tapper v Sampel, 54 AD3d at 435-436 [candidate admitted that witness statements on designating petitions did not comply with Election Law § 6-132 (2)]).
The Other Contested Signatures
The petitioner, Simcha Felder, identified various signatures on the petitions witnessed by Storobin which bore a significant dissimilarity with the signatures of the signatories subscribed on their buff cards. In furtherance of his claim of candidate fraud, Felder called, as an expert witness, Jeffrey Luber, a forensic handwriting expert, who opined that, based on various marked disparities between certain signatures on the designating petition and those on corresponding buff cards, those signatures on the designating petition were likely not authentic.
By doing so, Felder satisfied his burden of proof in support of his petition to invalidate Storobin’s designating petition by clear and convincing evidence with regard to each disputed signature (see PJI 1:64). Thus, it was incumbent on Storobin to come forward with evidence to demonstrate that the contested signatures he claimed to have obtained were, in fact, subscribed by the voters indicated. Storobin failed to do so, except with regard to alleged signatory Anatoliy Smolyanskiy, who was called to the stand by Storobin, and testified that it was his signature on the designating petition despite the visual variance *25 between that signature and that on his buff card, and despite Luber’s testimony. During the hearing, Smolyanskiy executed two dramatically different versions of his signature. Thus, solely as to the Smolyanskiy signature, Luber’s claim of lack of authenticity was disproved.
Although he satisfied his burden with regard to Smolyanskiy, Storobin never called Arnaldo Garcia, Lyudmila Tretyakov, and Carina Tretyakov to testify as witnesses, despite the fact that, based upon a simple visual analysis and without the need for expert testimony, each of their signatures on the designating petition varied greatly from those on their buff cards.[6] Upon his examination, Luber concluded that their signatures were forgeries. Luber’s testimony in this respect was not refuted by the signatories or Storobin.
Nevertheless, while noting the differences in the signatures, the Supreme Court ascribed the differences to the passage of time, and upheld the authenticity and, hence, the validity of the signatures without testimony relating to them. Such differences might well have negated Felder’s prima facie showing by clear and convincing evidence that these remaining contested signatures were not authentic (see Matter of Drace v Sayegh, 43 AD3d at 482).
Based upon Storobin’s admittedly false witness statement relating to the Issak/Danger signature, the Supreme Court’s determination to accept Storobin’s testimony that he witnessed those signatures was erroneous. While this Court accords great deference to the trier of the fact, who has had the opportunity to view the witnesses (see Matter of Drace v Sayegh, 43 AD3d at 482), the Court should nonetheless employ common sense in considering the totality of the testimony in context. That is, having falsely sworn to the truth of a designating petition, Storobin was not entitled to a finding of credibility (see PJI 1:22 [Falsus in Uno]). Further, the fact that Luber, as an expert, was mistaken about Smolyanskiy’s signature should not negate his testimony with regard to the other contested signatures, which, upon a comparison of the designating petition with the buff cards, were revealed to be dramatically dissimilar.
In addition, the signature of Edith Garcia on the designating petition also varied greatly from that on her buff card. However, *26 her testimony would have not been helpful since she is an enrolled Democrat, whose name did not appear on Storobin’s walk list. Thus, the witnessing of Edith Garcia’s “signature” also violated Election Law § 6-132 (2), which requires that the subscribing witness be of the same political party as the party signing the designating petition.
Team Method in Gathering Signatures
As noted by the majority, the “team method” of gathering signatures has been recognized by the Court of Appeals (see Matter of Rodriguez v Harris, 51 NY2d 737 [1980]). In his concurring opinion in that case, Judge Fuchsberg noted that such a signature-gathering method is “not per se improper or irregular” (id. at 738-739). Such recognition a fortiori implies that the signatures obtained by this method must still comport with the Election Law.
Here, in his testimony, Storobin revealed that he was aware that his volunteers gathered signatures while others signed the designating petition as witnesses. In addressing the Issak/ Danger issue raised by sheet 30, Storobin testified:
“Q: So, just to be clear, as you sit here today, your testimony is that when you completed the subscribing witness statement on sheet 30; you had no recollection that several hours earlier, a man signed the only sheet that you witnessed that only had one signature? Is that your testimony? . . .
“A: It wasn’t the only signature that we got at that time. I was walking with other volunteers that were getting different signatures. If they weren’t ones getting, so they were the ones witnessing.
“Sometimes it was me holding them, at which time I would be witnessing it. But, like I said, I was also witnessing for multiple days. On that day, which you were aware of” (emphasis added).
There was no further questioning on this subject by either side. On its face, Storobin’s testimony acknowledged that signatures on the designating petition were not witnessed by the volunteer who procured the signature. While no designating petition pages were specifically identified as having been obtained in this manner, in my view, the clear import of Storobin’s testimony supports a finding that he was a knowing participant in the fraudulent procurement of signatures on his designating petition, *27 and warrants its invalidation (see Matter of Cirillo v Gardiner, 65 AD3d at 639 [invalidation of a designating petition is appropriate where “the candidate had knowledge of the fraudulent manner in which the signatures were procured, and that he approved of such methods”]; Matter of MacDougall v Board of Elections in City of N.Y., 133 AD2d 198, 198 [1987] [“when the candidate (him)self has participated in the fraud, the petition should be invalidated”]).
Based upon the totality of the circumstances of fraud presented, the Supreme Court erred in denying the petition to invalidate Storobin’s designating petition. Accordingly, I respectfully vote to dismiss the appeal from the order dated August 10, 2012, reverse the final order entered August 13, 2012, grant the petition to invalidate Storobin’s designating petition, and direct the Board of Elections to remove the name of David Storobin from the appropriate ballots.
Ordered that the appeal from the order dated August 10, 2012, is dismissed, without costs or disbursements; and it is further,
Ordered that the final order entered August 13, 2012, is affirmed, without costs or disbursements.
Dickerson and Roman, JJ., concur with Dillon, J.E; Austin, J., concurs in part and dissents in part in a separate opinion.

. The minimum number of signatures required to qualify for the State Senate is 1,000 (see Election Law § 6-136 [2] [h]). More than 1,400 signatures were ultimately validated.

. Storobin testified, “So, no, I could absolutely not recall looking at the signature who it is because, like I said, it is scribbled beyond the first letter.”

. Storobin’s testimony that he only discovered his “mistake” when he received a call from a newspaper reporter about obtaining the signature of a dead person, and that he figured out his “mistake” by retracing his steps on July 6, 2012, when he “witnessed” the Issak/Danger signature, is disingenuous inasmuch as it highlights that he had the ability on July 6, before signing the false Statement of Witness, to figure out who the actual signatory was. Instead, he cavalierly allowed a sworn guess to substitute for the due diligence which would have permitted the preparation of an accurate petition page or, since there was only the one signature on the page, its omission from the packet of petition pages filed with the Board of Elections in the City of New York.

. Such a contention runs counter to Storobin’s testimony that he had a “usual” practice of printing a signatory’s name under his or her signature shortly after its subscription. Plainly, Storobin was not a political neophyte deserving of the benefit of the doubt he sought and obtained from the Supreme Court.

. Indeed, were Storobin a judge, this singular violation would justify his removal from the bench since he was guilty of false swearing based upon the witness statement he signed (see Matter of Heburn, 84 NY2d 168, 171 [1994]).

. Admittedly, there were many years between the time when these voters registered and the time when they purportedly signed the designating petition which, as Luber explained, can cause a slight variance in the appearance of the signature.